```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
KENNETH STEVENS,              :
                              :
              Petitioner,     :     No. 09 Civ. 4098 (JFK)
                              :     No. 03 Cr. 669 (JFK)
     - against -              :
                              :
UNITED STATES OF AMERICA,     :     Opinion & Order
                              :
              Respondent.     :
------------------------------X
```

APPEARANCES:

    For Petitioner:
        Kenneth Stevens, pro se

    For Respondent:
        PREET BHARARA
        United States Attorney for the
        Southern District of New York
            Of Counsel: Joan M. Loughnane

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Petitioner Kenneth Stevens' ("Stevens" or "Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Stevens claims that defense counsel provided ineffective assistance by permitting the participation of a non-attorney and convicted felon on his defense team, and for various trial strategy choices. For the reasons that follow, the motion is denied.

### I. BACKGROUND

    Indictment S1 03 Cr. 669 was filed on or about October 27, 2003, charging Stevens with four robberies in violation of

18 U.S.C. § 2113(a) in April and May of 2003 "by passing a teller a note demanding money and indicating that [he] had a bomb."

The Government established Stevens' involvement in the four charged robberies through overwhelming evidence, including testimony of the victim bank tellers, surveillance video and photographs of a person closely resembling Stevens taken during the robberies, and the demand notes that were handed to the victims, three of which bore his fingerprints.  Most damning to Stevens' cause was the fact that he was arrested minutes after the fourth robbery a few blocks from the bank in possession of: a deposit slip which read "I have a bomb.  Give me all the money"; a black plastic bag containing not a bomb, but a coffee canister; and $4,700 in cash — the amount stolen from the bank minutes beforehand.

Stevens was represented at trial by appointed counsel, Michael Young, Esq., then an attorney on the Criminal Justice Act panel.  Mr. Young did not call witnesses or present evidence for the defense, but did cross-examine the Government's witnesses.  Throughout the trial, Mr. Young was joined at the defense counsel table by Mr. Harvey Alter.  During voir dire, Mr. Young represented to the Court's deputy clerk that Mr. Alter was his associate, and the Court referred to Mr. Alter as such at trial.  Mr. Alter attended sidebars intended for attorneys

Case 1:03-cr-00669-JFK   Document 77   Filed 09/01/10   Page 3 of 13

only.  On the daily copies of the trial transcript, Mr. Alter's name was listed beneath Mr. Young's with the designation "Attorneys for Defendant."  Mr. Young and Mr. Alter did not correct the Court's understanding.

On September 20, 2004, a jury found Stevens guilty of all charges.  After trial, the Court learned that Mr. Alter was not an attorney and was a twice convicted felon.  Mr. Young withdrew as Stevens' attorney and the Court appointed new counsel for sentencing.  The Court, finding that Petitioner was a "career offender" under the Sentencing Guidelines, sentenced him to 216 months' imprisonment.

By Summary Order dated March 12, 2007, the Court of Appeals affirmed Stevens' conviction and sentence.  Through appellate counsel, Tina Schneider, Esq., Stevens filed a petition for a writ of certiorari to the United States Supreme Court on April 23, 2007.  The petition was denied on May 27, 2007, but Stephens was not informed of that fact at the time.  On February 11, 2009, Stevens wrote to Ms. Schneider inquiring as to the status of his petition.  On February 12, 2009, Ms. Schneider informed Stevens that his petition had been denied.  On March 9, 2009, Stevens filed the instant petition.

## II. DISCUSSION

### A. The Petition is Untimely

Under 28 U.S.C. § 2255, a petitioner has one year from the

3

finalization of a conviction to file a petition for habeas corpus. As the Supreme Court denied certiorari on May 27, 2007, Petitioner's filing missed that deadline by over nine months.

In certain situations, petitioners are entitled to equitable tolling of the limitations deadline on a § 2255 motion. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). A petitioner must satisfy two elements to benefit from equitable tolling. First, a petitioner must show that he exercised "reasonable diligence" during the limitations period, and second, that "extraordinary circumstances" precluded him from timely filing. Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). Generally, the error of an attorney is not sufficiently "'extraordinary' or 'rare and exceptional'" to warrant equitable tolling. Sanchez-Butriago v. United States, No. 00 Civ. 8820, 2003 WL 354977, at *2 (S.D.N.Y. Feb. 14, 2003).

There is nothing in the record from which the Court can conclude Petitioner exercised diligence in monitoring the limitations period. Petitioner sent a single letter to his counsel roughly a year and nine months after his conviction became final, nine months after the deadline had lapsed. The Second Circuit has described an unexplained one year and eight and a half month "period of inactivity" as demonstrative of "a marked lack of diligence." Warren v. Garvin, 219 F.3d 111, 114

(2d Cir. 2000).  Likewise, Petitioner's failure to contact his attorney until nine months after the year-long limitations period lapsed cannot be considered diligent behavior.

Even if Petitioner had acted diligently but, in light of his pro se status, was otherwise unable to bring such evidence to the Court's attention, Petitioner nonetheless does not demonstrate that "extraordinary circumstances" kept him from timely filing.  Having represented clients seeking Supreme Court review in the past, Ms. Schneider's failure to monitor the progress of the petition for certiorari and discover that the limitations period for a habeas motion had begun is precisely the type of "garden variety" attorney error that does not constitute an extraordinary circumstance necessitating equitable tolling. See Holland v. Florida, --- U.S. ---, 130 S. Ct. 2549, 2566, 177 L. Ed. 2d 130 (2010) ("[A] garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (internal quotations omitted)).

**B.  The Petition Lacks Merit**

Even if the petition had been timely, it would be denied on the merits.  Petitioner generally raises two challenges to the representation provided by Mr. Young.  First, Petitioner contends that he was denied effective assistance of counsel due to Mr. Alter's participation in his defense.  Second, Petitioner

5

claims that various aspects of Mr. Young's representation were insufficient. Specifically, Petitioner complains that Mr. Young: (1) did not object to the Government's use of a copy of fingerprint evidence, as opposed to requiring introduction of the original material; (2) did not hire a private investigator or expert witness to rebut the Government's fingerprint evidence; (3) did not inform the jury that the Government had subpoenaed a handwriting sample from Petitioner but ultimately did not use it at trial; (4) did not examine witnesses and police regarding the identification procedure and a photograph used before the line up[1]; and (5) withheld from him a compact disc of photographs.

Claims of ineffective assistance of counsel are considered under a two-part test. First, a petitioner must show that his counsel's assistance was deficient, and second, he must show that the deficient representation affected the result of trial.

---

[1] To the extent Petitioner implicitly raises a claim about the integrity of the police identification, it is procedurally barred. "A federal prisoner who fails to raise an issue on direct appeal is procedurally barred from asserting it for the first time on habeas review unless he can show cause and actual prejudice." Montero-Melendez v. United States, No. 02 Civ. 2062, 2003 WL 328294, at *2 (S.D.N.Y. Feb. 13, 2003) (quotation omitted); see United States v. Warren, 335 F.3d 76, 79 (2d Cir. 2003) ("If the defendant fails to raise a claim of error on direct appeal, habeas relief is generally available only upon a showing of cause and prejudice.") Petitioner did not argue in his direct appeal that suggestive police work may have tainted the identification, and because he has not provided a reason why that argument was not made on appeal, he cannot make it here.

See <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Attorney performance is judged by an "objective standard of reasonableness" under "prevailing professional norms." <u>Id.</u> at 687-88. The court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689). To satisfy the prejudice inquiry, petitioner must demonstrate that but for the ineffective representation, "there is a reasonable probability" that the result at trial would have been different. <u>Strickland</u>, 466 U.S. at 694. "[E]ven professionally unreasonable errors by defense counsel will not warrant setting aside the judgment in a criminal proceeding unless those errors were prejudicial." <u>Urena v. United States</u>, No. 06 Civ. 6050, 2007 WL 2319136, at *3 (S.D.N.Y. Aug. 8, 2007).

A petitioner challenging his attorney's trial strategy faces a weighty burden. See <u>Strickland</u>, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation . . . are virtually unchallengeable."). "Generally, a petitioner can only prove his counsel was ineffective if his counsel's actions

7

could not possibly be considered sound trial strategy." Contreras v. United States, No. 05 Civ. 9022, 2006 WL 2819644, at *3 (S.D.N.Y. Sept. 29, 2006).

The Court does not see any manner in which Mr. Alter's presence on the defense team rendered deficient the representation of Petitioner. Petitioner claims that Mr. Alter provided unspecified advice, came to his cell, attended side bars at trial, and was reprimanded by the Court at trial. He also contends that he had a right to be made aware of Mr. Alter's "status" as a non-attorney, convicted felon.

Mr. Alter's mere presence at trial did not affect the representation Petitioner received. There is no suggestion that Mr. Alter behaved in an inappropriate manner before the jury such that his presence could have biased the jurors against Petitioner. The Court's single rebuke of Mr. Alter took place while the jury was not in the courtroom, and related to his reaction to a ruling that took place outside the presence of the jury. Just as Petitioner and the Court believed Mr. Alter to be an attorney, the jury must have formed a similar impression. Since Mr. Alter's status as a non-attorney and convicted felon was not revealed until after trial, the jury could not have known and thus could not have been swayed by that information.

Moreover, there is nothing from which the Court can conclude that he provided Petitioner any advice or services that

8

were legal in nature. Although the Court believed that Mr. Alter was an attorney-associate, he and Mr. Young surely knew the truth. Mr. Alter sat at the defense table and attended sidebars, but Mr. Young was appointed to represent Petitioner and he carried out that task; he was the attorney of record, examined all the witnesses, addressed the jury, and otherwise presented Stevens' defense. The Court cannot take Petitioner's vague claim that he received "advice" from Mr. Alter to conclude that Mr. Alter overstepped his bounds by providing independent unlicensed legal advice that undermined the representation provided by Mr. Young. Similarly, there is nothing to show that had Petitioner known that Mr. Alter was a non-attorney or convicted felon, that he would have asked for new counsel or pursued a different defense.

Petitioner's claim that Mr. Alter's limited participation amounted to a denial of his right to conflict-free representation also fails because he cites no way in which Mr. Alter's interests diverged from Mr. Young's or his own. See United States v. Alkhabbaz, 319 F. App'x 7, 9 (2d Cir. 2009); Strouse v. Leonardo, 928 F.2d 548, 552 (2d Cir. 1991) ("[T]he mere possibility of a conflict is not enough to upset a conviction; the defendant must identify an actual conflict that impeded his lawyer's representation.").

Neither can the Court conclude that Petitioner received

9

deficient representation based on Mr. Young's decisions regarding the scope of cross-examination, whether to call certain witnesses, and whether to object to specific aspects of the Government's evidence.  These are clear tactical decisions. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (holding that the the "manner" and "extent" to which counsel conducts cross-examination are strategic decisions that, when "reasonably made, will not constitute a basis for an ineffective assistance claim."); Massaro v. United States, No. 97 Civ. 2971, 2004 WL 2251679, at *6 (S.D.N.Y. Oct. 5, 2004) ("Decisions about whether to object to certain evidence . . . fall squarely within the realm of trial strategy, and are rarely disturbed."); Slevin v. United States, No. 98 Civ. 0904, 1999 WL 549010, at *6 (S.D.N.Y. July 28, 1999) ("[T]he decision to call witnesses is a tactical one for defense lawyers, and should not be second-guessed by the courts.").  The defense strategy was to rely on the Government's failure to meet its burden rather than to make an affirmative case.  Such reliance falls well within reasonable professional standards, and "at times it is the best strategy for a lawyer to rely on the presumption of innocence." Slevin, 1999 WL 549010, at *6 (quoting Matos v. Miles, 737 F. Supp. 220, 222 (S.D.N.Y. 1990)).  Mr. Young's decision not to call defense witnesses or solicit certain testimony cannot be condemned as constitutionally unsound as it is within

professional norms.

Similarly, counsel's decision not to argue that the Government subpoenaed a handwriting sample from Petitioner but did not offer it into evidence was also a tactical decision. See Clanton v. Rivera, No. 06 Civ. 4756, 2010 WL 1685414, at *4 (S.D.N.Y. Apr. 22, 2010) ("The decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation." (quotation omitted)). As the Government stated in its summation, one of the notes was found in Petitioner's bag when he was arrested. Petitioner's possession of the note was likely more probative than any handwriting evidence would have been. Counsel's decision not to pursue that line of argument, which may have highlighted other, more inculpatory evidence, falls within reasonable professional norms.

Last, the Court cannot conclude that Mr. Young provided ineffective assistance by withholding a disc of "bank photos" from Petitioner. While Strickland acknowledges that counsel has a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments," 466 U.S. at 688, there is nothing here to suggest that Mr. Young did not fulfill this obligation. Petitioner does not indicate the precise content of these photographs or whether Mr. Young's supposed withholding of them was unreasonable. As other

11

photographs and surveillance video were in evidence, Mr. Young benefits from a presumption that these photographs – assuming that they were in fact not entered into evidence – were excluded for strategic reasons rather than ineptitude.

Petitioner has presented nothing from which the Court can conclude that Mr. Young's representation fell below an objective standard of reasonableness.  Even if Petitioner were able to satisfy this first prong of the Strickland standard, he would not be able to prove prejudice.  The evidence indicating his guilt presented by the Government at trial — including the demand note, the fake bomb, and the cash found on his person at the time of his arrest minutes after the fourth bank robbery — was so strong that even flawless representation most likely would have led to the same finding. See United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991) ("[G]iven the plethora of evidence against him, there is little reason to believe that alternative counsel would have fared any better.").

### III. CONCLUSION

Petitioner's § 2255 motion is both untimely and without merit. Accordingly, the motion is denied. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:   New York, New York
         September _1_, 2010

                                        _/s/ John F. Keenan_
                                        John F. Keenan
                                        **United States District Judge**